IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES SCHWAB & CO., INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 04 C 7071 |
| BRIAN D. CARTER, ACORN ADVISORY MANAGEMENT, L.L.C., AND ACORN ADVISORY CAPITAL, L.P., | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Charles Schwab & Co., Inc. ("Schwab") commenced this action against Defendants Brian D. Carter ("Carter"), Acorn Advisory Management, L.L.C. and Acorn Advisory Capital (collectively "Acorn"), alleging violations of title 18, United States Code, Sections 1030(a)(2)(A), (a)(2)(C), and 1030(a)(4) of the Computer Fraud and Abuse Act ("CFAA"), and various state law claims. Before the Court is Defendants' motion to dismiss the CFAA claim in Count VI pursuant to Federal Rules of Civil Procedure 12(b)(6). The Court denies this motion for the reasons discussed below.

## BACKGROUND

Schwab alleges in its Second Amended Verified Complaint ("SAVC") that Defendants engaged in a plan to wrongfully copy Schwab's proprietary financial modeling computer software and accompanying files. Specifically, Schwab contends that Acorn induced Carter, an employee of Schwab, to copy computer information, resign from Schwab, and take up employment with Acorn, delivering the copied information to Acorn.

## I. The Parties

Plaintiff Schwab is a California corporation. (SAVC at ¶ 17.) Schwab formerly had a business division, Schwab Soundview Capital Markets' Investment Analytics Division ("IA"), for which Carter worked. (*Id.* at ¶¶ 2-3.) Schwab closed that division on November 1, 2004, and either transferred or laid off all employees. (*Id.*) Defendant Carter is a former employee of Schwab, where he worked as the Director of Information Technology for IA. (*Id.* at ¶ 1.) He resigned from Schwab on October 22, 2004, and began working with Acorn. (*Id.* at ¶¶ 11-12.)

## II. Relationship between Schwab, Carter, and Acorn

Carter worked as Director of Information Technology for IA, a division of Schwab. (*Id.* at ¶ 2.) IA provided analytical research to institutional clients, including Acorn. (*Id.*) In September 2004, Schwab announced that it intended to close IA. (*Id.* at ¶ 4.) Upon learning such information, Acorn made an offer to purchase the business unit and acquire IA's software and a number of employees, including Carter. (*Id.* at ¶ 5.) Schwab turned down that offer because it wanted to protect its business modeling software. (*Id.* at ¶ 6.) After Schwab rejected Acorn's offer, Acorn offered employment to Carter and several analysts from IA. (*Id.* at ¶ 7.) The analysts declined the offer, but Carter accepted it. (*Id.* at ¶¶ 7-8.)

## III. Carter's Actions at the Behest of Acorn

Schwab alleges that on the weekend prior to October 18, 2004, Carter accessed approximately 15,000 of its computer files. (*Id.* at ¶ 8.) Schwab had furnished Carter with access to proprietary information, but required that Carter agree to keep such information confidential. (*Id.* at ¶¶ 26-27.) Further, Schwab alleges that it restricts access to information on a "need-to-know" basis, and that Carter had no reason to access this information for the purposes of his employment at Schwab. (*Id.* at ¶¶ 8, 26.)

On October 18, 2004, Carter e-mailed confidential information to Acorn concerning data sources that IA used in its research. (*Id.* at ¶ 8.) On October 21, 2004, Carter arrived at Schwab with a laptop computer capable of burning large amounts of information onto DVDs. (*Id.* at ¶ 9.) Schwab alleges that Carter, acting at the direction or on behalf of Acorn, used the computer to copy Schwab's proprietary business models. (*Id.*) On October 22, 2004, Carter resigned from Schwab. (*Id.* at ¶ 11.) Schwab alleges that Acorn paid Carter a considerable amount of money to leave Schwab prior to receiving his severance payment, and to deliver Schwab's proprietary business information to Acorn. (*Id.* at ¶ 12.) Finally, Schwab alleges that Defendants' actions caused Schwab to incur costs of at least $5,000 during a one-year period. (*Id.* at ¶ 79.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). When reviewing a motion to dismiss, the Court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Jet, Inc. v. Shell Oil Co.*, 381 F.3d 627, 629 (7th Cir. 2004).

## ANALYSIS

I.  **Language of the Statute**

The CFAA is primarily a criminal statute, but it also creates a private cause of action in Section 1030(g). *Four Seasons Hotels and Resorts BV v. Consorcio Barr, S.A.*, 267 F.Supp.2d 1268, 1321 (S.D.Fla. 2003). Section 1030(g) provides, in relevant part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves one of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B).

18 U.S.C. § 1030(g). Defendants claim that this section creates a civil cause of action only for violations of Section 1030(a)(5)(B)(i)-(v). Because Schwab alleges a violation of Sections 1030(a)(2)(A), (a)(2)(C), and (a)(4), but not specifically Section (a)(5)(B), Defendants argue that Schwab has failed to state a claim upon which relief can be granted. The Court disagrees based on the plain language of the statute.

"The cardinal rule of statutory interpretation is that courts must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose." *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunitions*, 376 F.3d 709, 712 (7th Cir. 2004) (quotation and citation omitted). Section 1030(g) does not limit private causes of action to violations of (a)(5)(B), but rather requires that a plaintiff suffer one of the factors listed in (a)(5)(B)(i)-(v) to state a claim under the statute. Sections 1030(a)(5)(B)(i)-(v) list five possible harms that a party might suffer as a result of conduct forbidden by the CFAA. None of the subsections includes any action or behavior that is prohibited. Instead, the subsection lists possible harmful results of violations of other parts of the statute.

In fact, Section 1030(g) defines that a civil action may be established when a "violation of this section" results in any of the "factors" listed in Section 1030(a)(5)(B)(i)-(v). "This section" refers to Section 1030. *See I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F.Supp.2d 521, 526 (S.D.N.Y. 2004) ("Section 1030(g) affords a civil action for any CFAA violation"); *Four Seasons*, 267 F.Supp. 2d at 1322 (recognizing claim under Section 1030(a)(5)(A)). The factors listed in Section 1030(a)(5)(B)(i)-(v) include "loss to one or more persons during any 1-year period…aggregating at least $5,000 in value." *See* 18 U.S.C. § 1030(a)(5)(B)(i).

Here, Schwab alleges that Acorn induced Carter to copy computer information, resign from Schwab, and take up employment with Acorn, delivering the copied information to Acorn. Schwab also alleges that it incurred costs of at least $5,000 during a one-year period. As such, Schwab has properly alleged a civil cause of action under the CFAA.

## II.  Purpose of the CFAA

Despite the plain meaning of the statute, Defendants assert that the CFAA is only an anti-hacking statute that was not meant to create a federal private cause of action for misappropriation of confidential information or trade secrets. When possible, the Court determines Congressional intent from the unambiguous language of the statute. *See Miscellaneous Firearms*, 376 F.3d at 712. As discussed above, the language of Section 1030(g) unambiguously creates a cause of action under the CFFA not restricted to Section 1030(a)(5)(B)(i)-(v). "Where the meaning of a statute is unambiguous, our sole task is to apply it straightforwardly to the facts at issue without referring to legislative history or other devices." *United States v. Jones*, 372 F.3d 910, 913 n.2 (7th Cir. 2004). Accordingly, the Court need not delve into the Congressional record as Defendants suggest.

Further, although Defendants argue that the statute should be narrowly construed as an "anti-hacking" statute, they do not explain why Carter's unauthorized access to Schwab's confidential information on its computer system and distribution of this information is not "hacking." Indeed, several district courts have recognized that damage caused by unauthorized access or access in excess of authorization to a computer system may be redressed under the CFAA. For instance, Chief Judge Charles Kocoras recognized that a plaintiff stated a claim under the CFAA when it alleged that the defendant had exceeded his authorized access and acquired trade secrets that were later used to the detriment of the plaintiff. *See George S. May Int'l Co. v. Hostetler*, No. 04 C 1606, 2004 WL 1197395, *3 (N.D. Ill. May 28, 2004). In *Four Seasons Hotel*, the Southern District of Florida acknowledged a claim under the CFAA when a licensee accessed the plaintiff's computer system without authorization. *See* 267 F.Supp. 2d at 1323-4. In addition, a district court in the Western District of Washington determined that a former employer properly stated a claim under the CFAA when it alleged that a former employee had sent e-mails including trade secrets and proprietary information to a competitor while still employed by the plaintiff. *See Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F.Supp. 2d 1121, 1124 (W.D. Wash. 2000); *see also Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F.Supp. 2d 1188, 1195 (E.D. Wash. 2003) ("Caselaw supports an employer's use of the CFAA's Civil Remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system"). In sum, these cases further support the Court's conclusion that Schwab has properly alleged a civil cause of action under Section 1030(g).

### III. Rule of Lenity

Finally, Defendants contend that the Court should apply the rule of lenity, and construe any ambiguity in the language of the statute in their favor. The rule of lenity dictates that when a statute's language is "grievously" ambiguous, the court should construe the statute in favor of the accused. *Chapman v. United States*, 500 U.S. 453, 462-463, 111 S. Ct. 1919, 1926, 114 L. Ed. 2d 524 (1991). Because the Court concludes that there is no ambiguity in the language of the statute, the rule of lenity does not apply.

### CONCLUSION

For these reasons, the Court denies Defendants' motion to dismiss Count VI.

Dated: February 11, 2005

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**